IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GEORGE DAVID GEORGE | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 3:21-cv-00463 |
| | ) | |
| | ) | JUDGE RICHARDSON |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence

pursuant to 28 U.S.C. § 2255 (Doc. No. 1, "Petition"), wherein Petitioner seeks vacatur of his

conviction and sentence in his underlying criminal case (Case No. 3:15-cr-00069-1) by which he

is serving a prison term of 240 months. On September 3, 2021, the Government filed a response

in opposition to the Petition (Doc. No. 8, "Response"). On October 9, 2021, Petitioner filed a reply

(Doc. No. 11, "Reply"). For the reasons discussed herein, the Petition (Doc. No. 1) will be

**DENIED.**

## BACKGROUND[1]

On May 13, 2015, Petitioner was charged by information with wire fraud (in violation of

18 U.S.C. § 1343), mail fraud (in violation of 18 U.S.C. § 1341), securities fraud (in violation of

15 U.S.C. §§ 78j, 78ff), and money laundering (in violation of 18 U.S.C. § 1957) ("Counts 1-4")

---

[1] Unless otherwise noted, the facts in this section are taken from documents on the record of
Petitioner's underlying criminal case (Case No. 3:15-cr-00069-1). Documents cited from
Petitioner's underlying criminal case will be cited "R. __", rather than the citation to "Doc. No.
__" which will indicate a citation to a document in Petitioner's civil case (the above-captioned
case). The facts in this section are taken as true for purposes of this Opinion.

(R. 1). Petitioner was then released on bond subject to certain conditions, including not soliciting monies for investment or loans. (R. 7).

Petitioner waived his felony indictment and represented to the Court that he contemplated entering a plea of guilty. (R. 6, 9). But on September 28, 2015, Petitioner notified the Court that "due to some recent developments it appear[ed] that the case may not be resolved short-of-trial." (R. 13).

On January 15, 2016, the Government moved to revoke Petitioner's pretrial release because he was soliciting money in connection with investment schemes in violation of his pretrial release conditions. (R. 19). A few weeks later, Petitioner moved to set a change of plea hearing, noting that "[t]he parties [ha[d] reached a plea agreement in [Petitioner's] case." (R. 20).

On March 8, 2016, Petitioner pled guilty to Counts 1 and 4 (wire fraud and money laundering) pursuant to a plea agreement containing the parties' joint recommendation of a sentence of 72 months' imprisonment pursuant to Fed. R. Crim. P. 11(c)(1)(C). (R. 30). Judge Kevin Sharp rejected this plea agreement based on his view that the sentencing factors under 18 U.S.C. § 3553(a) weighed in favor of a sentence higher than 72 months. (R. 152).

Shortly thereafter, the United States Probation Office ("USPO") notified the Court that Petitioner yet again violated his pretrial release conditions by passing a worthless check. (R. 44). On June 23, 2016, Petitioner again pled guilty to Counts 1 and 4 (wire fraud and money laundering) pursuant to a second Fed. R. Crim. P. 11(c)(1)(C) plea agreement, this one jointly recommending a sentence of 92 months' imprisonment. (R. 49).

Judge Sharp again rejected the plea agreement, specifically, Judge Sharp rejected Petitioner's request to run Petitioner's (recommended) 92-month sentence concurrently with an anticipated state court sentence in a pending Nevada case against Petitioner. Thereafter, on October

25, 2016, Petitioner withdrew his guilty plea. (R. 63).

The case was then set to proceed to trial on January 3, 2017 (R. 64) but was continued until March 7, 2017 (R. 68) and later continued again, to May 9, 2017 (R. 82). On February 1, 201 the Government filed a superseding indictment consisting of ten counts against Defendant, including wire fraud, mail fraud, and securities fraud. (R. 70, "Superseding Indictment").

A few weeks before trial, on April 24, 2017, the Government again moved to revoke Petitioner's pretrial release because he had been engaged in a check-kiting scheme while on supervision. (R. 99). The Court set a hearing on the Government's motion to revoke pretrial release for May 3, 2017. (R. 102).

On May 1, 2017, Petitioner cut off his ankle monitor, tossed it into the woods, and fled the jurisdiction. (Doc. No. 154). A couple of weeks later, he was indicted (in a new, separate case in this district) for knowingly and willfully failing to appear at a bond revocation hearing (set for May 3, 2017) in violation of 18 U.S.C. § 3146(a)(1). (Case No. 3-17-cr-00087, Doc. No. 1)[2].

Almost two years later, Petitioner was apprehended outside Jacksonville, Florida, where he had been living under an alias while posing as a psychiatrist.[3] (R. 149 ("PSR") at 9, 18). The case was again reset for trial, this time to begin on March 18, 2019 before visiting United States District Judge Billy Roy Wilson. (R. 121).

Six days before the scheduled trial date of March 18, Petitioner filed a motion to set a change-of-plea hearing, noting that the parties had reached a plea agreement and that Petitioner was prepared to enter his guilty plea. (R. 134). On March 18, 2019, Petitioner signed a third plea

---

[2] This case was later dismissed on March 19, 2019.

[3] As is customary, the Presentence Investigation Report ("PSR") was filed under seal in this case, and it shall be deemed unsealed by virtue of this memorandum opinion only insofar as the contents of the PSR are disclosed herein.

agreement with the Government, this time pursuant to Fed. R. Crim. P. 11(c)(1)(B), whereby the parties agreed to recommend to the Court a final offense level of 30. (R. 142). On the same date, Petitioner pled guilty to Counts One through Ten of the Superseding Indictment. (R. 70, 154 at 23). It appears that the parties and the Court agreed that sentencing would occur that same day, presumably because, the PSR had already been prepared and revised several times in 2016. As indicated above, Judge Wilson gave Defendant a total sentence of 240 months; specifically, Defendant received 240 months on Counts One through Nine, each count to run concurrently with one another and with 120 months on Count Ten.

On April 4, 2019, Petitioner filed a notice of appeal of his criminal judgment.[4] (R. 148). The Sixth Circuit affirmed the district court's judgment on March 12, 2020. (R. 158).

Petitioner has been serving his sentence at Yazoo City United States Penitentiary. According to the Federal Bureau of Prisons, Petitioner's projected release date is January 18, 2036. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Oct. 15, 2021). On June 14, 2021, Petitioner filed the instant Motion claiming infective assistance of counsel. (Doc. No. 1).

## SECTION 2255 PROCEEDINGS

28 U.S.C. § 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[4] Petitioner was represented by Mr. Peter Strianse for his underlying criminal case and on appeal.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

If a material factual dispute arises in a Section 2255 proceeding, the court must hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute. Accordingly, Petitioner's request for an evidentiary hearing will be **DENIED**.

## MOTION FOR APPOINTMENT OF COUNSEL

Via the Petition, Petitioner asks the Court to "appoint counsel to represent him in subsequent proceedings", which the Court will construe as a request for counsel during the pendency of Petitioner's Section 2255 Petition. (Doc. No. 1 at 15). The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "'critical' stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-

conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action.").

Movants do not possess a right to counsel in pursuing Section 2255 motions. *See Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001) (citing *Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987)); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) ("This Court and others, however, have recently reaffirmed the rule that the Sixth Amendment does not apply to collateral attacks.").

"In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Petitioner fails to present any unique circumstances justifying appointment of counsel. Petitioner has failed to articulate why he is unable to present his 28 U.S.C. § 2255 motion *pro se*. Moreover, the Court believes that it is able to fairly adjudicate such motions even though one side (and not the other) is unrepresented by counsel. That is not to say that learned counsel cannot contribute something, especially something regarding nuances, to a petitioner's cause on these motions. But it is to say that typically, the degree of substantive merit of these motions is evident to the Court even without learned counsel advocating the merits on the petitioner's behalf. Accordingly, Petitioner's request for counsel will be **DENIED**, and the Court will proceed to the merits of the Motion.

## ANALYSIS

Via the Motion, Petitioner asks the Court to vacate, set aside, or correct his sentence due to the alleged ineffective assistance of his counsel. (Doc. No. 1). Specifically, Petitioner contends that his counsel (i) inadequately represented him during the pretrial stage of his underlying criminal case; (ii) failed to properly investigate the alleged involvement of others in his underlying criminal case; (iii) failed to properly prepare for the sentencing hearing; and (iv) inadequately represented him during the appellate process. (*Id.*).

A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "It has long been settled that a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (internal quotation marks and citation omitted). In *Strickland*, the Supreme Court set forth a test to evaluate claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that rendered the result unreliable.

*Strickland*, 466 U.S. at 687.[5] Under the first prong of the *Strickland* test, a petitioner must establish that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range

---

[5] The Sixth Circuit has concluded that the *Strickland* standard discussed herein applies to ineffective assistance of appellate counsel as well. *Jackson v. Bradshaw*, 681 F.3d 753, 774 (6th Cir. 2012).

of reasonable professional assistance. . . ." *Id.* at 688. Strategic choices made by counsel after thorough investigation are virtually unchallengeable. *Id.* at 690. Petitioner bears the burden of proving by a preponderance of the evidence that counsel was deficient. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

Under the second prong of Strickland, the petitioner must establish that the attorney's poor performance prejudiced the case. *Monea*, 914 F.3d at 419. "Courts need not address the first element if the petitioner cannot prove prejudice. In fact, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). "Proving prejudice is not easy." Id. Petitioners face a "high burden" in demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted).

To obtain an evidentiary hearing on a claim of ineffective assistance of counsel, however, a petitioner must present more than conclusory statements. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (acknowledging that conclusory statements are insufficient to warrant habeas relief); *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (holding that a "conclusory statement" without more is "wholly insufficient to raise the issue of ineffective assistance of counsel"). Thus, where the petitioner has not provided any detail to support his or her claims, those claims should be dismissed. *See Johnson v. United States*, 457 F. App'x 462, 466-67 (6th Cir. 2012); *United States v. Domenech*, No. 1:06-CR-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013).

The Court will address each of Petitioner's asserted grounds for relief in turn.

1. Petitioner's Allegation that His Counsel Inadequately Represented Him During the Pretrial Stage of His Underlying Criminal Case

Petitioner first contends that his counsel was ineffective because he failed to appreciate the "grave circumstances" of Petitioner's case and failed to "do the necessary groundwork" at the pretrial stage, including "interviewing potential witnesses, [obtaining] financial experts, obtaining affidavits, medical evidence, and evidence of mental health issues." (Doc. No. 1 at 7). Defendant contends that such "groundwork" could have resulted in "either a favorable plea agreement, or [forced] the government to prove its case at trial." (*Id.*). He also contends that his counsel exposed Petitioner to additional sentencing liability "by delaying the resolution of the case." (*Id.*). (*Id.*).

As noted above, it is Petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *Short*, 471 F.3d at 691. In particular, the Petitioner "must 'affirmatively prove prejudice.'" *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).

Petitioner has not alleged any facts that, if taken as true, demonstrate prejudice i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis*, 658 F.3d at 536. Where, as here, a petitioner "alleges a failure to investigate on the part of his counsel [he] must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009) (upholding district court's denial of claim that counsel was ineffective for not conducting further investigation because the record did not show what information could have been further investigated, what that investigation would have shown, or how it might have alternated the outcome); *Hutchinson v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (explaining that a "petitioner cannot show deficient performance or prejudice resulting from a

failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material"); *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997) ("[I]n order to succeed on a failure to investigate claim, the petitioner must demonstrate what the attorney would have discovered had a proper investigation occurred, as well as what evidence would have been introduced at trial.").

Here, Petitioner fails to allege with specificity what would have been revealed if his trial counsel had "interview[ed] potential witnesses, [obtained] financial experts, obtain[ed] affidavits, medical evidence, and evidence of mental health issues." He further does not explain how undertaking these activities would have altered the outcome of his case. Instead, Petitioner simply alleges in a conclusory fashion that additional investigation *may* have resulted in either "a favorable plea agreement, or [forced] the government to prove its case at trial." (Doc. No. 1 at 7). As the Government aptly points out, "[i]t is pure speculation that any additional legwork by defense counsel would have changed the outcome[.]" (Doc. No. 8 at 17). Petitioner's "conclusory statement" without more are "wholly insufficient to raise the issue of ineffective assistance of counsel" at the pretrial stage. *See Elzy*, 205 F.3d at 886. And as cases like *Green* indicate, a petitioner cannot make mere conclusory allegations in hopes that something promising develops at an evidentiary hearing; rather, non-conclusory allegations (at a minimum) are required to obtain an evidentiary hearing in the first place.

Furthermore, Petitioner does not allege *how* his counsel delayed the resolution of his case, or *how* such a delay increased his sentence liability. Conclusory assertions of a prejudicial delay—devoid of any factual matter as to the nature of the delay and the prejudice resulting therefrom—do not support a claim that Petitioner's counsel was ineffective at the pretrial stage. Moreover, Petitioner's argument that counsel exposed Petitioner to harsher sentencing "by delaying the

resolution of the case" is contradicted by the record, which reveals that the delay in the resolution of the case was largely due to the fact that Petitioner absconded from the jurisdiction and was not apprehended until nineteen months later. (R. 121).

Accordingly, because Petitioner only asserts in a conclusory fashion that more investigation during the pre-trial stage would have aided his case, Petitioner has not alleged any facts that would establish deficient performance or prejudice. Nor has he alleged how his trial counsel delayed his case, and the record in fact contradicts that assertion. Therefore, his claim that his counsel was ineffective at the pre-trial stage is rejected.

2. Petitioner's Allegation that His Counsel Failed to Properly Investigate Kershner and Castenir

Petitioner argues that his "counsel showed no interested [sic] in pursuing a possible defense built around the fraudulent activities of Kershner and Castenir, who had a [sic] extensive legal history of fraud in the area of investment schemes and phony stocks."[6] (Doc. No. 1 at 9). Petitioner notes that his counsel "failed to investigate the role in which both of these convicted fraudsters played in exploiting of Petitioner's naïve interest in pursuing a health care investment that led him to be misled and taken advantage of in the organization stages of his business venture." (*Id*. at 10).

Petitioner fails to allege how he was prejudiced by counsel's alleged failure to investigate Kershner and Castenir's activities, because he does not allege what information (of which he was previously unaware), the investigation would have revealed or how that information would have altered the outcome of his proceedings. Petitioner claims that he was "naïve" and exploited by these men; however, he had full knowledge of his version of those facts (the facts regarding his

---

[6] In Defendant's Reply, he notes that Kershner was his accomplice. (Doc. No. 11 at 5). It is unclear what Castenir's relationship is to the Petitioner, though this not particularly relevant for present purposes.

relationship and interaction with these men) prior to pleading guilty and yet decided to plead guilty anyway. Accordingly, counsel's alleged failure to investigate such relationship provides no basis for relief under Section 2255. *See Pruitt v. Wilson*, No. 1:06CV3048, 2008 WL 5378341, at *5 (N.D. Ohio Dec. 19, 2008) (denying an ineffective assistance of counsel claim alleging failure to investigate where the petitioner was aware of the facts that he alleged should have been investigated prior to pleading guilty, and the petitioner still chose to pled guilty anyway). Further, to the extent that Petitioner argues that the investigation could have revealed information about these men's criminal activities that would have served as a defense at trial or aided Petitioner at sentencing, as the Government aptly points out (Doc. No. 8 at 20), it is unclear from the Petition how evidence that Kershner and Castenir were *also* fraudsters—that they were culpable *in addition to* rather than *instead of* him—would have somehow been a defense to his own criminal activity or resulted in a lower sentence for Petitioner. The absence is telling; there is no reason to believe that such evidence would have aided Petitioner at all at a hypothetical trial or at sentencing.

Moreover, counsel's decisions as to which arguments to pursue at sentencing are decisions of strategy, and strategic decisions must be particularly egregious before they will provide a basis for relief. *See Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *see also Phillips v. White*, 851 F.3d 567, 576 (6th Cir. 2017) (applying the presumption that counsel's actions are sound strategy to an attorney's strategic decisions at sentencing); *Hanna v. Ishee*, 694 F.3d 596, 612 (6th Cir. 2012) ("The burden rests on the [petitioner] to overcome the presumption that the challenged conduct might be considered sound trial strategy."). Petitioner's conclusory assertions that trial counsel "did not have an interest" in pursuing "a defense" based on Kershner and Castenir's "fraudulent activities" do not meet that standard.

Petitioner also asserts that "Petitioner was available to assist this prosecution [(the

prosecution of Castenir and Kershner)], but defense counsel never followed through on the request

of Petitioner." (*Id*.). The Government argues that this statement is contradicted by the record and

points to Petitioner's statement at the final sentencing hearing where he explained not only that he

had provided information to the Government, but that he was satisfied with trial counsel's

representation of him. Petitioner explained at the hearing,

> I'd like to begin by thanking my attorney, Peter Strianse. He has been tireless in his
> efforts in my behalf and gone above and beyond the call of duty, and I appreciate
> that. … And all I can ask Your Honor is that – you know, I did – I got no
> consideration for acceptance of responsibility as far as not taking this to trial, and I
> did help the government back before I left with another case related to this. My
> attorney and I spent several hours on a phone call with another gentleman in behalf
> of the government, and I got no consideration for that.

(R. 154). This statement does not necessarily contradict the claim that trial counsel did not follow

up on Petitioner's request to help with the prosecutions of Castenir and Kershner in particular, as

Petitioner merely stated at the sentencing hearing that he helped the government "with another

case related to" his case without specifying which case. (*Id*.).  Nevertheless, even accepting as true

that trial counsel did not follow up with the Government on Petitioner's request to aid with the

prosecutions of Castenir and Kershner, he does not explain what information regarding Castenir

and Kershner, he could have revealed, or how revealing that information to the Government would

have obtained a different result; for example, he provides no reason to believe that the Government

would have wanted and accepted his assistance as to Castenir and Kershner or that such assistance

would have ultimately resulted in leniency at sentencing as a result of, for example, a Government

motion under U.S.S.G. § 5K1.1. Additionally, as the record reveals that Petitioner did speak to the

Government about another case (even assuming it was neither Castenir of Kershner's), Petitioner

could have raised the topic of Castenir and Kershner himself. Accordingly, Petitioner has not

alleged that—let alone *how*—he was prejudiced by trial counsel's alleged failure to follow up with

the Government regarding Petitioner's information on Castenir and Kershner (assuming that

counsel in fact did not do so).

Accordingly, Petitioner's claim of ineffective assistance of counsel as it relates to Castenir

and Kershner is denied.

3. Petitioner's Allegation that His Counsel Failed to Properly Prepare for His Sentencing Hearing

Third, Petitioner contends that his counsel's

> lack of preparation, inadequate explanations to his client, and failure to prepare to
> adequately argue the sentencing factors favorable to Petitioner clearly prejudiced
> Petitioner's position and subjected Petitioner to greater punishment than might have
> [sic] otherwise have been expected. Petitioner's estimated loss figures clearly put
> him into the sentence range of 70 to 100 months, even with enhancements, and
> defense counsel failed to present the sentencing court with the facts of factually-
> similar cases, wherein defendants received a sentence with at lower range. As a
> result of defense counsel's deficiencies, Petitioner received an unconscionably long
> sentence, more than double what it should have been.

(Doc. No. 1 at 10-11). Specifically, Petitioner asserts that his counsel "induced" Petitioner to

accept sentencing on the same date as his guilty plea, and that his counsel failed to object to five-

hours of testimony at the sentencing hearing. (Doc. No. 1 at 6). He also argues that his counsel

was deficient because "counsel offered no rebuttal testimony and was unprepared to offer any

evidence on behalf of the Petitioner." (Doc. No. 1 at 6). Further, Petitioner contends that his

counsel "failed to arrange for a mental health examination of Petitioner to ascertain the nature of

what appeared to be a severe gambling addiction that is minimally documented in the PS[R]" and

failed to present this as mitigating evidence to the sentencing court. (Doc. No. 1 at 12-13).

Most of Petitioner's allegations regarding his counsel's performance at sentencing are

conclusory, and therefore, do not support this Court granting relief. *See Elzy*, 205 F.3d 882, 886

(6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective

assistance of counsel). For example, Petitioner does not allege any factual matter revealing how

he was "induced" to accept sentencing on the same date as his guilty plea, let alone that such inducement constituted deficient performance rather than sound strategic advice, or at least a strategic decision to which this Court must defer. And even if he had alleged such factual matter, he has also not alleged how proceeding to the sentencing hearing on the same day he entered his plea prejudiced him. Further, he does not explain what testimony should have (but was not) objected to by his trial counsel, and how such objection may have changed the length sentence. Additionally, he does not explain what rebuttal evidence his counsel should have offered, and how such rebuttal evidence could have changed his sentence. Accordingly, he has not shown that his counsel was ineffective at sentencing.

The allegation that trial counsel failed to present the sentencing court with cases wherein defendants in similar circumstances received lower sentenced is wholly contradicted by the record. In Defendant's sentencing memorandum, he asserted that "[t]he types of sentences imposed in fraud cases beyond this district are instructive and appropriately considered by the Court" and then attached a five-page chart listing over forty-five cases, which he analogized to the defendant's case. (R. 137 at 7-11). This clearly contradicts Petitioner's assertion that "defense counsel failed to present the sentencing court with the facts of factually-similar cases, wherein defendants received a sentence with a lower range."

Finally, Petitioner asserts that his counsel did not conduct a mental health examination of Petitioner, which (according Petitioner) may have revealed mitigating evidence that could have been offered at sentencing. Petitioner then references his "severe gambling addiction" that "was minimally referenced in the PS[R]." (Doc. No. 1 at 12-13). "Absent actual, probative evidence relating to [Petitioner's] mental health that trial counsel missed, there can be no prejudice and therefore no ineffective assistance of counsel under *Strickland*." *Carter v. Mitchell*, 443 F.3d 517,

530 (6th Cir. 2006); *Lorraine*, 291 F.3d 416, 439 (6th Cir. 2002) ("Trial counsel cannot be deemed ineffective, since even at this late date, there is no medical proof of . . . a [mental] condition.").

Here, Petitioner does not allege that his counsel was aware of his gambling addiction (if indeed Petitioner had a gambling addiction of which counsel could potentially have been aware).[7] The PSR elsewhere notes that "[t]he defendant reported no history of mental or emotional problems, and there is no information to suggest otherwise." (R. 149 at ¶ 97).[8] Petitioner cannot now claim that his counsel was deficient for failing to investigate mental health issues that Petitioner himself denied having at the time. Petitioner has cited no evidence of his mental health issues that trial counsel supposedly could have presented at sentencing, and "[i]t cannot be deficient performance for a lawyer to fail to present evidence which does not exist nor can the failure to present such evidence be prejudicial." *United States v. Petrosino*, No. 3:14-CR-120, 2015 WL 7254306, at \*3 (S.D. Ohio Nov. 17, 2015).

Accordingly, Petitioner's claim that his counsel rendered ineffective performance in preparation for and at the sentencing hearing is rejected.

4. Petitioner's Allegation that his Counsel Provided Inadequate Representation during the Appellate Process

Finally, Petitioner contends that his counsel failed to adequately represent him during his

---

[7] As noted, Plaintiff does refer to his alleged "severe gambling addiction" that supposedly was "minimally referenced in the PS[R]." Taken in context, though, Plaintiff's emphasis here is not on the gambling addiction allegedly being referenced, but rather on the alleged reference to a gambling addiction was minimal. In other words, Plaintiff's point here seems not to be that his counsel must have known of his severe gambling addiction because it was referenced in the PSR, but rather than his counsel needed to do more to educate the Court about his severe gambling addiction because any reference to it in the PSR was only *minimal*. For this reason, the Court is disinclined to credit Plaintiff with having actually alleged that his counsel must have known of his gambling addiction because it was referenced in the PSR. But any such allegation in any event would be flatly contradicted by the PSR itself, which simply does not refer to any gambling *addiction* (severe or otherwise) for Petitioner, and instead refers only to some gambling by Petitioner.

[8] At sentencing, Petitioner (through his counsel) made only one objection to the PSR, which was on a point unrelated to this portion of the PSR. He thus conceding the accuracy of the remainder of the PSR (to which he did not object), including the statement that he had no history of mental or emotional problems. (R. 254 at 26-30).

appellate proceedings. (Doc. No. 1 at 13). Specifically, Petitioner alleges that "it is clear from the record of the case that counsel failed to present sufficient evidence to overcome the minimal prior offenses that he had committed prior to this case."[9] (*Id*. at 14). But the Petition in no way indicates what this alleged failure has to do with his appellate proceedings. Both a "failure to present evidence" and a "failure to overcome" detrimental information at sentencing is quintessentially a failure at the *trial* rather than appellate stage. Moreover, Plaintiff's claim overlooks that his counsel had much more to overcome at sentencing than just "minimal prior offenses"—in particular his egregious offense conduct and his unusually dreadful behavior while on pretrial release.

Petitioner here also alleges that counsel "squandered his opportunity at the trial level to preserve a challenge to this statute on appeal, [thus] limiting [any such challenge] to the 'plain error' analysis.'" (*Id.*). In context, it is clear that the only statute to which he is referring is 18 U.S.C. § 3553(a). That being the case, his assertion here makes no sense. Counsel did not assert any challenge to this statute on appeal, let alone receive any analysis (plain-error or otherwise) from the Court in response to such challenge. Nor does Petitioner provide any support that the failure to "challenge" (meaning, presumably, on constitutional grounds) the statute in the trial court either reflected deficient performance or was prejudicial; in particular, he provides no reason to believe that any (extremely far-fetched) challenge to 18 U.S.C. § 3553(A) would have been successful.

On the other hand, the Sixth Circuit did review something (and only one thing) under a plain-error standard: the procedural reasonableness of the district court in pronouncing the sentence, and in particular whether the district court failed to consider all the § 3553(a) factors or

---

[9] In context, it seems clear that Petitioner here could be referring only to a failure to "overcome" his prior criminal history information when seeking for leniency at sentencing—in other words, a failure to achieve a better sentence, resulting from a failure to adequately counter the supposedly relatively minor detrimental impact of his prior criminal convictions.

adequately explain the chosen sentence.[10] (R. 158 at 6). So it seems likely that Petitioner here

actually was referring not to counsel's alleged failure to make in the trial court a constitutional

*challenge to Section 3553(a)*, but rather to counsel's failure to make in the trial court (as necessary

for Petitioner to have avoided the disadvantageous plain-error standard of review) an *objection to

the procedural reasonableness (considering the requirements of Section 3553(a)) to the sentence*.

As an initial matter, if the failure to make the procedural-reasonableness objection at the

time of sentencing constituted deficient performance, it would have been deficient performance at

the trial stage, and not the appellate stage as represented by Petitioner. But in any event, any such

deficiency would have been harmless, not prejudicial because the Sixth Circuit made clear that it

would have rejected the challenge to the procedural reasonableness under *any* standard, and not

just the plain error standard occasioned by counsel not raising the objection in the trial court. (*Id.*)

(rejecting challenge to procedural reasonableness of the sentence "because George has not shown

error, plain or otherwise.").

In short, Petitioner has alleged no factual matter as to how his counsel's performance on

appeal amounted to ineffective assistance of counsel. Indeed, he actually has not alleged, even in

conclusory fashion, an error of counsel made *during appellate* proceedings. Accordingly, his claim

that his counsel failed to adequately represent him at the appellate proceedings fails.

Additionally, Petitioner also blandly asserts that he "had a right for appellate counsel to

file a petition for a writ of certiorari to the U.S. Supreme Court on the issues raised in his appeal."

(Doc. No. 1 at 14). The Sixth Circuit has explained that counsel cannot be ineffective in failing to

petition for a writ of certiorari, because review by the Supreme Court is discretionary and thus a

---

[10] It is probably most accurate to say that the Sixth Circuit reviewed this issue under both a plain-error standard, and, alternatively, the abuse of discretion standard; the Sixth Circuit expressly determined that there was no need to decide which of the (only) two potentially applicable standards applied here and found petitioner's challenge to procedural reasonableness without merit under either standard. (R. 158 at 6).

petitioner does not have a right to *any* counsel, let alone *effective* counsel. *See Washpun v. United States*, 109 F. App'x 733, 735 (6th Cir. 2004); *see also Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) ("The Sixth Amendment guarantees that at trial and on direct 'first tier' appeal every criminal defendant will have access to a lawyer to assist his or her defense . . . the Constitution does not entitle a defendant to the assistance of counsel for a discretionary appeal" and "so the failure to file for such review cannot amount to constitutionally ineffective assistance.").Thus, he has alleged no facts that would support a finding of deficient performance or prejudice on the part of counsel in no filing a certiorari petition. Accordingly, Petitioner's argument that his counsel was ineffective during the appellate process is without merit.

## CONCLUSION

For the reasons discussed herein, the Petition (Doc. No. 1), Petitioner's request to appoint counsel, Petitioner's request for an evidentiary hearing, and Petitioner's request for this Court to grant him bail will be **DENIED.**

An appropriate Order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE